IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER JOHANNE GARRIS, JR., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:10-CV-504 |
| ALFONSO L. GOBER, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 49.) The plaintiff, Christopher Garris, Jr., is a prisoner in the custody of the North Carolina Department of Public Safety.[1] He claims that the defendant prison guard, Sergeant Alfonso Gober, applied excessive force when he slammed a door typically used for food service and mail on Mr. Garris's hand. Sergeant Gober's evidence suggests that he at worst acted negligently, and the only evidence Mr. Garris has proffered that Sergeant Gober acted maliciously is in the form of a conclusory and uncorroborated sentence in an unsworn statement by Mr. Garris which is inconsistent with other statements by Mr. Garris. That scintilla of evidence does not provide a basis on which a reasonable jury could find in favor of Mr. Garris, and the motion should therefore be granted.

---

[1] Some of the documents filed in this case reference the "North Carolina Department of Correction." Recently, the Department of Correction was consolidated with other state agencies to form the North Carolina Department of Public Safety. For purposes of this opinion, the Court treats the former Department of Correction and the current Department of Public Safety as interchangeable and will refer to the entity as "the Department."

## APPLICABLE LEGAL PRINCIPLES

"In the prison context, a claim that officials applied excessive force falls under the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . ." *Tedder v. Johnson*, No. 12-6687, 2013 WL 2501759, at *3 (4th Cir. June 12, 2013). The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation marks omitted), and from "inhumane treatment and conditions while imprisoned," *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). *See also Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams,* 77 F.3d at 761.

The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 10 (quoting *Whitley*, 475 U.S. at 327).

As to the subjective component, the key question is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21 (quotation marks omitted); *see Iko*, 535 F.3d at 239; *Tedder*, 2013 WL 2501759, at *3. This standard reflects that "officials confronted

with a prison disturbance" must quickly and decisively "balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6; *see United States v. Gore*, 592 F.3d 489, 494 (4th Cir. 2010). In determining whether prison officials have acted maliciously and sadistically, a court should balance any relevant information, including the need for the application of force, the extent of injury inflicted, the relationship between the need and the amount of force that was used, "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials . . . , and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321.

## THE ALLEGATIONS

In his amended complaint, Mr. Garris alleges:

> [O]n April 19th, 2010 Alfonso L. Gober knowingly did take his right knee hit the food service trap door closed as I was reaching to grab my food tray. Alfonso L. Gober then took his right hand pushing up onto the trap with all of his body weight causing blood to stream down my hand. He was aware that my hand/(left ring finger) was caught in the door but he continued to apply pressure onto the food service door attempting to lock Plaintiffs left ring fing [sic] inside of food service door. After five minutes and several attempts to secure the trap door Defendant Alfonso L. Gober relieved enough space in food service trap door for plaintiff to remove his left ring finger from food service door.

(Doc. 41 at 1-2.)[2]

In his "Motion for Relief or Trial by Jury," (Doc. 54), which the Court reads as submitted in opposition to the motion for summary judgment, Mr. Garris complains he did not receive timely medical care after his finger was injured. (*Id.* at 7.) However, he did not make allegations about this in his amended complaint, where indeed he appears to allege that he did

---

[2] For reasons not clear to the Court, the defendant mistakenly cites a brief filed by the plaintiff rather than the amended complaint when discussing the specificity of the allegations.

3

receive immediate medical care and was charged for it by the prison. (Doc. 41 at 2.) A complaint cannot be amended by assertions in a brief. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013). Therefore, the Court will limit its consideration to the claims made in the amended complaint.

## THE EVIDENCE

In support of his summary judgment motion, Sergeant Gober has submitted his own affidavit, the affidavit of Lisa Starr, and his discovery responses. Mr. Garris has not submitted any evidence in opposition to the motion. Mr. Garris has submitted copies of the defendant's evidence, with handwritten comments written on those copies. (*See, e.g.*, Doc. 52 at 11.) These comments are not sworn and are not submitted in a form allowed by Federal Rule of Civil Procedure 56. The Court does not consider them to be evidence. His original complaint and his amended complaint were not verified, (*See* Docs. 2, 41), nor was a five-page declaration he filed as part of a document titled "Plaintiffs Declairations depositions transcripts interrogatory responses and other evidence [sic]." (Doc. 52 at 1-5.)

A. <u>Sergeant Gober's Testimony</u>

In his affidavit, Sergeant Gober testifies that on April 19, 2010, he was dispatched to Mr. Garris's cell block because Mr. Garris was refusing to allow another officer to close the "wicker trap door" to Mr. Garris's cell. (Doc. 50-1 at ¶ 4.) Wicker trap doors, or tray doors,[3] are used to serve food trays, to deliver medication and mail, and for other administrative purposes. (*Id.* at ¶ 20.) When not in use, the doors remain closed and locked for unspecified security and safety reasons. (*Id.*) When Sergeant Gober arrived, Mr. Garris had his arm through the tray door. (*Id.*

---

[3] Elsewhere in the record these doors are called "food tray doors" or "letter tray doors." The Court will refer to them as "tray doors."

at ¶¶ 5-6.)  Sergeant Gober ordered Mr. Garris to remove his arm, but Mr. Garris refused.  (*Id.* at ¶ 6.)  After again refusing to remove his arm, Mr. Garris began talking and then removed his arm from the door.  (*Id.* at ¶¶ 7-8.)  Sergeant Gober began closing the tray door, and Mr. Garris responded by pushing on the door; one of Mr. Garris's fingers was pinched as the door was being closed.  (*Id.* at ¶¶ 9-11.)  Sergeant Gober immediately opened the door so Mr. Garris could remove his finger, and Sergeant Gober closed the door again.  (*Id.* at ¶ 12.)  Sergeant Gober then called medical staff to examine Mr. Garris.  (*Id.* at ¶ 13.)

B.  Sergeant Starr's Testimony

Sergeant Starr testifies that she is a correctional sergeant with the Department of Public Safety who conducted an investigation into the April 19 incident at issue and that she determined that staff followed proper policy and procedure and used the minimal amount of force necessary.  (Doc. 50-2 at ¶¶ 3-5.)  She also states what happened during the underlying incident.  (*Id.* at 6-13.)  Because it is apparent Sergeant Starr was not a witness to the underlying incident, her testimony about what happened is hearsay and not admissible for the truth.  Her opinions that staff, including presumably Sergeant Gober, complied with proper policy and that staff used the minimal amount of force necessary might be admissible, though that is not at all clear.  *See Kopf v. Skyrm*, 993 F.2d 374, 377-79 (4th Cir. 1993) (discussing admissibility of expert opinion testimony in excessive force case and questioning its use when force involved "bare hands").  Mr. Garris has not objected to consideration of this evidence or asked that the Court's consideration of it be limited.

C.  Sergeant Gober's Discovery Responses

Sergeant Gober has submitted his responses to the plaintiff's interrogatories, (Doc. 50-3 at 2-8), and to the plaintiff's request for production of documents.  (*Id.* at 9-37.)  Included in

5

these materials are the Department's procedures on the use of force, (*id.* at 25-37), the Department's report of the April 19 incident at issue in this case, (*id.* at 14-19), and two written statements by Mr. Garris describing the incident. (*Id.* at 18, 20.)

The incident report includes a written statement by Sergeant Gober and a "statement of facts" that contains a summary of Sergeant Gober's account of the incident. (*Id.* at 14, 17.) Sergeant Gober's written statement and the report's summary of his statement are generally consistent with his affidavit.

One of Mr. Garris's statements was his grievance to prison authorities over this event, (*id.* at 20), and the other appears to have been written as part of a prison investigation into the events at issue. (*Id.* at 18.) While these statements are not in affidavit form nor do they comply with 28 U.S.C. § 1746, they would certainly be admissible if offered by the defendant, as they are admissions by the plaintiff. Thus, as they have been proffered by the defendant, apparently for the truth of the matter asserted,[4] the Court will consider those statements as evidence of the truth.

In his witness statement, Mr. Garris says that Sergeant Gober was called by another officer to talk to Mr. Garris about some unspecified situation. (Doc. 50-3 at 18.) He then states, in relevant part:

> As I was handing [Officer] Frazier my tray Sgt. Gober shoved my fingers in the door (under door). I was telling him that my finger was in the door but he insisted on forcing the trap door closed when he then realized that my finger was really on the door he released so I could pull my finger free.

(*Id.*)

---

[4] In his brief, the defendant explicitly relies on the grievance statement as an admission by Mr. Garris that he had refused to remove his hand from the tray door. (Doc. 50 at 3 (citing Doc. 2 at 5-7)). The defendant has not suggested that the Court should not consider the rest of that statement or the witness statement for the truth of the matter asserted, and the Court cannot think of a reason it should not consider all parts of those statements made on personal knowledge.

6

In his grievance statement, Mr. Garris asserts:

> Sgt. Gober was called because I refused to allow Officer Frazier to close my wicker door. Being that Sgt. Gober was called to assist with the situation his intentions was to use ["]use of force["] which by policy he should have called for the OIC or unit manager to assist the situation of securing my wicker door. Instead of calling the OIC/unit manager Sgt. Gober took it upon himself to use ["]use of force["] [in violation of Department policies]. Sgt. Gober used excessive use of force [sic] by slaming [sic] my left ring finger inside of the wicker door. He was aware of my finger being stuck in the cell door but he continued to apply force causing my finger to be broken.

(*Id.* at 20.)

## ANALYSIS

Under Sergeant Gober's testimony, he closed the tray door when he thought Mr. Garris had removed his arm, Mr. Garris stuck his arm back through after Sergeant Gober began closing the door, and Sergeant Gober opened the door as soon as he realized Mr. Garris's finger was stuck. This conduct is not excessive force and does not constitute a constitutional violation.

Under the version of events in Mr. Garris's witness statement, Sergeant Gober was at most negligent in closing the tray door. (*See* Doc. 50-3 at 18 ("[W]hen he then realized that my finger was really in the door he released so I could pull my finger free.").) Proof of negligence is not enough to establish liability in a prison excessive force claim. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley*, 475 U.S. at 319)). Under this version, no jury could conclude that Sergeant Gober acted maliciously or sadistically, so any differences between this version and Sergeant Gober's testimony are not material.

Under the version supplied in Mr. Garris's grievance, Mr. Garris was refusing to allow correctional officers to close the tray door and had his hand or arm in the door despite directions to remove it; Sergeant Gober "slammed" the door and continued to apply force even after he

7

realized Mr. Garris's finger was "stuck" in the door. (Doc. 50-3 at 20.) The question is whether differences between this version and Sergeant Gober's testimony raise a disputed question of material fact which would prevent entry of summary judgment for the defendant. Stated another way, does Mr. Garris's grievance version of events offer a sufficient evidentiary foundation for a jury to find a constitutional violation? Under the somewhat peculiar factual situation in this case, the Court concludes it does not.

First, even under the grievance version it cannot be disputed that Sergeant Gober could use some degree of force to obtain compliance with a reasonable prison rule requiring tray doors to be shut. Indeed, Mr. Garris appears to argue that the use of pepper spray would have been an appropriate response to his refusal to move his arm. (Doc. 54 at 2.) Mr. Garris's refusal to move his arm out of the door presented security and safety risks that justified Sergeant Gober's use of some degree of force, so long as that force was not constitutionally excessive.[5] *See Whitley*, 475

---

[5] Sergeant Gober and Sergeant Starr each testified that:

> For security and safety reasons, individual wicker trap doors must remain closed and locked when not in use for serving food trays, delivering medications, delivering mail or other administratively necessary tasks. . . . Inmate Garris' refusal to allow the closure of his wicker trap door presented a security risk and safety threat that could not be ignored and had to be rectified in an expeditious manner.

(Doc 50-1 at ¶¶ 20-21; Doc 50-2 at. ¶¶ 20-21.) They do not describe how large the opening of the tray door is or specifically identify what the safety and security risks are. In his brief, Sergeant Gober contends that open tray doors give rise to the potential for assault from inmates, throwing of liquids or feces, or lock tampering. (Doc. 50 at 9.) While the defendant's contentions in his brief certainly make sense, they are not evidence. *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984), *superseded on other grounds by statute as recognized in INS v. Hector*, 479 U.S. 85, 90 n.7 (1986); *see also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (affirming district court's determination that statements by counsel are not evidence). Elsewhere in the record, however, there is evidence that Mr. Garris was trying to grab Sergeant Gober's arm, (Doc. 50-3 at 15), thus supporting the contention that an open tray door gives rise

8

U.S. at 320-21. Contrary to Mr. Garris's argument, (Doc. 51 at 1-2), the mere fact that Mr. Garris was injured does not establish that the force was excessive. *See Wilkins*, 559 U.S. at 37-38 ("The core judicial inquiry" under the Eighth Amendment is "not whether a certain quantum of injury was sustained . . . . Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." (internal quotation marks omitted)).

Second, Mr. Garris's statement that Sergeant Gober "knew" his finger was stuck in the tray when he applied more pressure is very general and does not contain any detail to indicate how Mr. Garris knows that Sergeant Gober had this knowledge. There is no statement, for example, that Mr. Garris called out that his finger was stuck or otherwise told Sergeant Garris about his injury, and there is no indication of how much time passed while his finger was caught. Courts "generally consider self-serving opinions without objective corroboration not significantly probative." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). This is especially true here because the plaintiff has made other statements indicating Sergeant Gober immediately opened the tray door when he realized Mr. Garris's finger was caught. (Doc. 50-3 at 18.) Moreover, in a different context, the Fourth Circuit has held that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting [accounts] of the plaintiff[] . . . is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).

Finally, Mr. Garris has offered no sworn testimony of his own or indeed any evidence at all as to the facts and circumstances surrounding the incident at issue. Nor has he offered any evidence disputing the accuracy of Sergeant's Gober's affidavit. His conclusory grievance

---

to a risk of assaults by inmates. Moreover, Mr. Garris has offered no evidence to contradict the defense evidence that open tray doors pose security and safety risks.

9

statement does not provide any context for evaluating whether Sergeant Gober's actions were excessive or appropriate. Indeed, in his briefs in opposition to the defense motion for summary judgment, Mr. Garris characterizes Sergeant Gober's conduct as negligent. (Doc. 51 at 1; Doc. 53 at 1; Doc. 54 at 5.)

Certainly the evidence must be viewed in the light most favorable to the non-moving party, Mr. Garris. However, "a scintilla of evidence" supporting Mr. Garris's position is insufficient to require a jury trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Mr. Garris's unsworn conclusory statement—which is inconsistent with another statement by Mr. Garris as well as with the sworn testimony of other witnesses—does not provide a basis "on which the jury could reasonably find for the plaintiff." *Id.*

It is **ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 49), is **GRANTED**.

This the 22nd day of August, 2013.

_____
UNITED STATES DISTRICT JUDGE